UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CEDRIC JACKSON                                                                                               PLAINTIFF
ADC #554571

V.                                      No. 4:17CV00769-BRW/JTR

TIM RYALS, Sheriff, Faulkner County
Sheriff's Office; GARRY STEWART,
Physician, Faulkner County Jail Unit 1;
JOHN RANDALL, Major, Faulkner
County Jail Unit 1; and GARY ANDREWS,
Lieutenant, Faulkner County Jail Unit 1                                                        DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Cedric Jackson ("Jackson") filed this *pro se* § 1983 action alleging that, while he was a pretrial detainee at the Faulkner County Detention Center

("FCDC"), Defendants Sheriff Tim Ryals, Dr. Garry Stewart, Major John Randall, and Lieutenant Gary Andrews violated his constitutional rights by: (1) subjecting him to overcrowded conditions; and (2) denying him mental health care. *Docs. 9 & 12.*[1]

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts, arguing that all of Jackson's claims should be dismissed because he failed to exhaust the administrative remedies available to him at the FCDC. *Docs. 32, 33 & 34.* Although notified of his right to file a Response, Jackson did not respond, and the time for doing so has passed. *Doc. 35.* Thus, the issues are joined and ready for disposition.[2]

---

[1]On January 26, 2018, the Court struck Jackson's original Complaint from the record because it contained improperly joined claims, and instructed him to file a Substituted Complaint. *Docs. 2 & 5.* On February 28, 2018, Jackson filed a Substituted Complaint and a Supplement. *Docs. 9 & 12.* After screening those filings, the Court dismissed: (1) Jackson's improperly joined inadequate medical care claim regarding an injured hand; and (2) all claims against Defendant Lieutenant Huffman. *Docs. 15 & 17.* Thus, Jackson's overcrowding and mental health care claims are the only remaining claims in the case.

[2]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

## II. Discussion

### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA also requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir.

3

2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

Jackson did not respond to Defendants' Motion for Summary Judgment or otherwise contest any of the facts set forth in Defendants' Statement of Facts (*Doc. 34).* Accordingly, all of those facts, which form the basis for Defendants' Motion for Summary of Judgment, are now deemed to be admitted. *See* Local Rule 56.1(c); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (holding that grant of summary judgment motion was proper where non-moving party had not filed response to motion, district court had under local rules deemed as admitted facts set forth in summary judgment motion, and summary judgment was appropriate based on uncontroverted facts set forth in motion).

The FCDC's grievance policy allows detainees to submit written grievances about "a complaint, request or problem." Doc. 34, Ex. A2 (FCDC Section 009, Grievance Procedure). The policy requires two steps for exhaustion: (1) submission

of a written grievance to "any detention officer"; and (2) an appeal "to the next level in the chain of command." *Id.* This policy was in effect at the time of Jackson's confinement, and he utilized it by filing at least thirty-three grievances between August 2017 and July 2018. *Id., Ex. A* (Randall Affidavit ¶¶ 3-4) & *Ex. A1* (Jackson's grievances).

In his Substituted Complaint, which he signed under penalty of perjury, Jackson *admits* that he failed to file a grievance over the overcrowding and lack of mental health care at the FCDC. *Doc. 9 at 3-4; see Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994-95 (8th Cir. 2001) (complaint signed under penalty of perjury is equivalent of a verified complaint, and a plaintiff may rely on the facts stated therein just as if they had been stated in an Affidavit); *see also Doc. 34, Ex. A* (Randall Affidavit ¶ 2).

In *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the Court clarified that the PLRA's exhaustion requirement contains no "judge-made" exceptions, such as good cause. Instead, a prisoner must properly exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use." *Id.* at 1858. Clearly, the FCDC grievance procedure was "available" to Jackson for his current claims, as evidenced by his ability to file numerous *unrelated* grievances during his FCDC incarceration, all of which were addressed by FCDC personnel. *Doc. 34, Ex. A1; see*

5

*Trevino v. Woodbury County Jail,* 623 Fed. Appx. 824, 825 (8th Cir. 2015) (record belied prisoner's assertion that jail officials prevented him from using its grievance procedures, where he filed eleven written complaints while there and presented no evidence that any official thwarted his efforts to file more); *Hammett v. Cofield,* 681 F.3d 945, 948-49 (8th Cir. 2012) (prisoner's previous use of grievance procedures demonstrated that he understood the process and that prison officials were responding to his "many grievances and grievance appeals").

In his pleadings, Jackson does not allege that administrative remedies were not "available" to him at the FCDC. Rather, he claims, without further explanation, that the FCDC grievance procedure was not "adequate." *Doc. 9 at 3-4.* In *Ross,* the Court emphasized that administrative remedies are "unavailable" only under three limited circumstances which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In light of Jackson's extensive grievance history while incarcerated in the FCDC, his conclusory allegation that the FCDC procedure was not "adequate" does

6

*not* come close to satisfying any of the narrow exceptions recognized by the Court in *Ross*. Furthermore, the Eighth Circuit has repeatedly held that a prisoner's subjective beliefs about exhaustion are irrelevant in determining whether administrative remedies were "available" to him. *Porter v. Sturm,* 781 F.3d 448, 451 (8th Cir. 2015) ("It does not matter that the inmate 'subjectively believed that there was no point in pursuing administrative remedies.'"); *Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005); *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

Dismissal of Jackson's claims is mandatory if he failed to exhaust the administrative remedies available to him. *Jones,* 549 U.S. at 211; *Johnson,* 340 F.3d at 627-28. To satisfy the PLRA's exhaustion requirement Jackson was required to file both a grievance and an appeal regarding the alleged overcrowding and denial of mental health care at the FCDC. He did neither. Accordingly, Jackson's claims against Defendants should be dismissed, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 32)* be GRANTED, and Jackson's claims against all Defendants be DISMISSED, without prejudice.

DATED this 31ˢᵗ day of January, 2019.

                                                        _____
                                                        UNITED STATES MAGISTRATE JUDGE